UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRIGHT IMPERIAL LIMITED,

                    Plaintiff,

        v.

REDTUBES.US, et al.,

                    Defendant.

Civil Action No. 1:10-cv-572 GBL/JFA

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff Bright Imperial Limited ("Bright"), submits this Memorandum of Law in

Support of its Motion for Entry of Default Judgment against the defendant domain name

<redtubes.us> ("Infringing Domain Name" or "Defendant").  No person or entity asserting any

interest in Defendant has answered or otherwise responded to Plaintiff's Verified Complaint by

the deadline set by the Court.  The Defendant is now in default and has thus admitted the well-

pled facts alleged in Plaintiff's Verified Complaint.  There is no genuine issue of fact remaining

in this suit, and Default Judgment should be entered against Defendant, thereby transferring the

Infringing Domain Name to Bright.

## I.
## BACKGROUND

Bright owns and operates <redtube.com>, one of the most highly trafficked adult

websites on the internet, where it offers a number of services, including dating and introduction

services (the "Redtube Website").  As of July 28, 2009, the Redtube Website was the 63rd most

trafficked website in the world, and the 3rd most popular adult website on the Internet, according

to Internet statistics site Alexa.com.  *See* Declaration of Thayer M. Preece ("Preece Decl."), attached hereto as *Exhibit A*, at ¶¶ 3-4; *see also*, true and correct printouts of the Alexa statistics for <redtube.com> as of July 28, 2009, attached hereto as *Exhibit B*.

Bright, by virtue of its own use and an assignment from its predecessor-in-interest, Jager & Polacek GmbH, owns various rights in the REDTUBE trademark, including U.S. Trademark Serial Numbers 77/605,467 and 77/649,785, Australian Trademark Registration No. 1228767, and Swiss Trademark Registration No. 587395, among others.  Bright's U.S. Trademark Registration No. 3,843,119 includes protection for "Matchmaking and social introduction services."  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 5; *see also*, true and correct copies of Bright's and its predecessor's trademark registrations, attached hereto as *Exhibit C*.  Bright and its predecessor-in-interest have been operating the Redtube Website under the REDTUBE mark since at least as early as July 2006.  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 12.  By October 2008, the Redtube Website had gained enormous popularity, and was averaging over 7 million visits per day.  *See id.*; *see also*, Google Analytics, a true and correct printout of which is attached hereto as *Exhibit D*.

In the summer of 2009, Bright discovered that another entity was operating an online dating website at the nearly identical domain <redtubes.us>.  The website posted at <redtubes.us> made frequent use of the REDTUBE mark throughout the page, in bold and colored typeface, and also used phrases and expressions that might be typical of an adult site. *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 6; *see also*, true and correct copies of the <redtubes.us> website as of July 30, 2009, attached hereto as *Exhibit E*.

Bright asked that its counsel determine the identity of the operator and send a cease and desist letter.  *See* Preece Decl., attached hereto as *Exhibit A*, ¶ 7.  Counsel for Bright

utilized WHOIS[1], a query/response protocol used for querying databases to determine the registrant or assignee of Internet resources, to locate the most recent email and postal addresses associated with the Infringing Domain Name.  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 6.  Counsel's WHOIS searches also indicated that the Infringing Domain Name was registered on or about October 24, 2008.  *See* true and correct copies of WHOIS searches, attached hereto as *Exhibit F*.

Bright's counsel sent a letter to the registrant of the Infringing Domain Name on July 29, 2009 informing the registrant that the <redtubes.us> website was infringing Bright's trademark and requested, *inter alia*, that the registrant take down the <redtubes.us> website and transfer the Infringing Domain name to Bright.  Bright's counsel sent the letter to the most recent postal address listed for the registrant, as well as to the "info@flowerslebanondelivery.com" e-mail address, which was the most recent e-mail address listed for the registrant.  *See* Preece Decl., attached hereto as *Exhibit A,* at ¶ 9; *see also* E-mails between Thayer M. Preece and "info@flowerslebanondelivery.com," attached hereto as *Exhibit G*.

Counsel for Bright received an initial response from an unidentified individual using the "info@flowerslebanondelivery.com" e-mail address denying that <redtubes.us> was infringing the REDTUBE trademark.  Counsel for Bright sent several subsequent emails to the "info@flowerslebanondelivery.com" e-mail address reiterating that <redtubes.us> was infringing the REDTUBE trademark and demanding that the registrant cease using the REDTUBE mark.  *See* Preece Decl., attached hereto as *Exhibit A,* at ¶ 10; E-mails between Thayer M. Preece and "info@flowerslebanondelivery.com," attached hereto as *Exhibit G*.  The registrant acknowledged

---

[1]     WHOIS operates by sending a query to the appropriate server used in communicating with an Internet website and obtains certain identifying information that registrants of

that he or she operated the <redtubes.us> website, but refused to acknowledge that the website infringed the REDTUBE trademark or comply with Bright's demands to cease infringing the REDTUBE mark.  *See id.*

## II.
## PROCEDURAL HISTORY

Bright initiated the instant action against the Infringing Domain Name by filing a complaint on June 1, 2010 (the "Verified Complaint"). [2]  Declaration of Karin Hunter Johnson ("Johnson Decl."), ¶ 2, attached hereto as *Exhibit H*.  Bright sought damages and injunctive relief for:  (1) trademark infringement, false designation of origin and unfair competition (15 U.S.C. § 1125(a)); (2) trademark dilution ((15 U.S.C. § 1125(c); (3) common law trademark infringement and unfair competition; and (4) cybersquatting (15 U.S.C. § 1125(d)).  Johnson Decl., ¶ 2.  In the alternative, Bright sought injunctive relief to prevent ongoing cybersquatting, pursuant to the *in rem* provisions of the Anticybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d)(2)).  Johnson Decl., ¶ 2.

Following a hearing on June 25, 2010 during which the Court expressed doubts regarding the existence of personal jurisdiction over the individual or entity Defendants named in the Verified Complaint, Bright elected to proceed under the *in rem* procedures set forth in the ACPA.  To that end, on July 15, 2010, Counsel for Bright sent a copy of the Complaint via registered e-mail to the registrant of the Infringing Domain Name ("Registrant"), at the dedicated e-mail address provided by the Registrant (as identified in the WHOIS record for the Infringing Domain Name).  The message was delivered to the server associated with that e-mail address and

---

Internet domains are required to provide.  *See* Preece Decl., attached hereto as *Exhibit A* at ¶ 7.

[2]      Bright filed the Verification to Complaint on July 12, 2010.

was opened.  *See* Johnson Decl., ¶ 4; E-mail to Registrant and Registered E-mail Receipts, true and correct copies of which are attached hereto as *Exhibit I*.  Bright also sent a copy of the complaint to the address identified in the WHOIS record.  *See* Johnson Decl., ¶ 4; Letter to Redtubes.us dated July 15, 2010, a true and correct copy of which is attached hereto as *Exhibit J*.  Counsel for Bright also sent a copy of the Verified Complaint to Neustar, Inc., which administers the registry for all<.us> domain names.  *See* Johnson Decl., ¶ 5; E-mail to Neustar, Inc. and Registered E-mail Receipt, a true and correct copy of which is attached hereto as *Exhibit K*.

Bright then filed its Motion for an Order to Publish Notice of Action re <redtubes.us> Domain Name on July 29, 2010.  Johnson Decl., ¶ 6.  The Court entered an Order to publish notice of the present action (the "Order") on August 5, 2010.  Johnson Decl., ¶ 6.  A copy of the Order was published in *The Washington Times* on August 11, 2010.  Johnson Decl., ¶ 7.  On August 17, 2010, Bright's counsel filed a Declaration Describing Compliance with the Court's Order to Publish Notice of Action.  Johnson Decl., ¶ 7.

Pursuant to paragraph 3(D) of the Order and Local Admiralty Rule C(6)(a), any person asserting an interest in the Infringing Domain Name was required to file a verified statement identifying the interest or right within 21 days of the Order's publication in *The Washington Times*, *i.e*, by no later than September 1, 2010, or risk forfeiture or cancellation of the Infringing Domain Name.  To date, no party asserting rights in <redtubes.us> has appeared or otherwise defended this action.  Johnson Decl., ¶ 8.  On September 17, 2010, Bright filed a Request for Entry of Default pursuant to Fed. R. Civ. R. 55(a).  A default was entered by the clerk on October 1, 2010.  Bright now brings this Motion for Entry of Default Judgment.

# III.
# ARGUMENT

A court may enter default judgment at its discretion pursuant to FED. R. CIV. P 55(b)(2).  Entry of default judgment is proper where the pleadings and supporting materials establish that a plaintiff is entitled to the requested relief.  *See Ryan v. Homecoming Fin. Network.*, 253 F.3d 778, 780 (4th Cir. 2001).  Well-pleaded statements of fact in a Complaint are deemed admitted when a defendant fails to answer or otherwise respond.  *See id.*; *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

Bright's claim in this *in rem* action is for violation of the ACPA.  Thus, in order to establish that it is entitled to a default judgment, Bright must show jurisdiction is proper and that there is no genuine issue of fact as to whether the Infringing Domain Name has been used to violate the ACPA.  *See* 15 U.S.C. § 1125(d)(2)(A).

Based upon the admitted statements of fact in the Verified Complaint, and the submitted supporting evidence, Bright is entitled to default judgment in this matter.

## A.      Jurisdiction is Proper

This Court has both subject matter and *in rem* jurisdiction over this action.  The Court has original jurisdiction over this action because it arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  Section 39 of the Lanham Act, 15 U.S.C. § 1121, provides for original jurisdiction in federal courts for violations of the Act.  Thus, subject matter jurisdiction is proper.

Further, *in rem* jurisdiction is also proper under the ACPA.  The *in rem* provisions of the ACPA provide that

> The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if —

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

(ii) the court finds that the owner — (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by —

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A).

To establish that *in rem* jurisdiction is proper under the ACPA, Bright must show that (1) the Infringing Domain Name was registered or assigned by a domain name registrar, domain name registry, or other domain name authority located in the Eastern District of Virginia; (2) the Infringing Domain Name violates Bright's trademark rights; and (3) Bright cannot establish *in personam* jurisdiction over a proper defendant or cannot locate such a defendant. Bright can easily satisfy these requirements.

Neustar, Inc., which is not a party to this action, maintains the <.us> registry in which the infringing domain name resides, and is located within this judicial district, specifically at 46000 Center Oak Plaza, Sterling, Virginia. *See* Compl. at ¶ 15. Because the Infringing Domain Name is in the <.us> registry, an *in rem* action may be brought against it in the Eastern District of Virginia.

Additionally, as discussed more fully below, the Infringing Domain Name has violated Bright's trademark rights, thus establishing the second element of an *in rem* action in this District. *See Infra*, Section III(B).

Furthermore, Bright is unable to obtain *in personam* jurisdiction over the registrant of the Infringing Domain Name.  The registrant appears to be either an entity or individual in Lebanon, and Bright has no evidence at this time to suggest that this entity or individual has sufficient contacts with the United States to trigger long arm jurisdiction.  *See Cont'l Airlines, Inc. v. Continentalairlines.com*, 390 F. Supp. 2d 501, 507 (finding that *in personam* jurisdiction could not be found where domain name registrant was a foreign entity and plaintiff had no evidence of contacts with the United States); *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (same).

Finally, Bright properly effected service of process under the *in rem* service provisions of the ACPA, which provides that the following actions constitute service of process:

> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. §§ 1125(d)(2)(A)-(B).  Bright complied with these provisions by sending a copy of the Verified Complaint to the postal and e-mail address provided by the registrant of the Infringing Domain Name on July 15, 2010 and publishing notice of this action on August 11, 2010 in *The Washington Times*.  *See Exhibits I* and *J*; *see also* Johnson Decl., ¶ 4.

In light of the foregoing, Bright has established that jurisdiction in this Court is proper.

## B.  Undisputed Evidence Supports Bright's Claim Under the Anti-Cybersquatting Consumer Protection Act

To establish a violation of the ACPA, Bright must show that: (1) it possesses a valid, protectable trademark; (2) the defendant registered, trafficked in, or used a domain name that is, in the case of a mark that is distinctive at the time of registration of the domain name,

identical or confusingly similar to Bright's trademark; and (3) the defendant acted with bad faith intent to profit from the good will associated with the trademark. *See Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004).

Alternatively, a plaintiff can establish an *in rem* ACPA claim by showing the elements of traditional infringement and dilution claims under 15 U.S.C. §§ 1114, 1125(a) & (c). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228 (4th Cir. 2002); *see also Cont'l Airlines, Inc. v. Continentalairlines.com*, 390 F. Supp. 2d 501, 507 (E.D. Va. 2005); *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va 2008).

Undisputed evidence establishes the elements of both bad faith registration and traditional trademark infringement or dilution.

## 1.    Bright Possesses Valid and Protectable Trademarks

Bright owns various rights in the REDTUBE trademark, including U.S. Trademark Registration No. 3843119, Australian Trademark Registration No. 1228767, and Swiss Trademark Registration No. 587395, among others. *See* Preece Decl., attached hereto as *Exhibit A*, ¶ 5; *see also*, *Exhibit C*, hereto. These registrations constitute *prima facie* evidence of the validity of these marks. *See Continentalairlines.com*, 390 F. Supp. 2d at 507 (holding that plaintiff's registration for CONTINENTAL AIRLINES satisfied the first element of its cyberpiracy claim); *Volkswagentalk.com*, 584 F. Supp. 2d at 883 (same).

Bright and its predecessor-in-interest have been operating the Redtube Website under the REDTUBE mark since at least as early as July 2006. *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 12; *see also*, *Exhibit D*, hereto. By virtue of this use, Bright has acquired common law trademark rights in the REDTUBE trademark in addition to its statutory trademark rights. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir.

2003) ("at common law, trademark ownership is acquired by actual use of the mark in a given market").

**2.    Defendant Used a Domain Name That is Nearly Identical and Confusingly Similar to Bright's Marks**

The REDTUBE Trademark is inherently suggestive, and therefore was distinctive at the time of registration of the Infringing Domain Name.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 112 S. Ct. 2753, 2757–2759 (1992) ("[The category of suggestive] marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive").  The majority of the Infringing Domain Name is comprised of an exact reproduction of Bright's REDTUBE Trademark.  Thus, Bright has established the second element of a cyberpiracy claim under the ACPA.

The Infringing Domain Name was registered on October 24, 2008.  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 8; *see also*, WHOIS searches, attached hereto as *Exhibit F* and  Compl. ¶ 27.  Bright has asserted, and Defendant has admitted through its default, that the Marks were distinctive and famous prior to the registration of the Infringing Domain Name. Compl. ¶ 23.

Moreover, objective evidence supports Bright's claim that the REDTUBE Trademark was distinctive and famous at the time the Infringing Domain Name was registered. Bright's Australian trademark registration is dated March 10, 2008—over seven months before the Infringing Domain Name was registered.  When the Infringing Domain Name was registered, the Redtube Website had been in operation for over two years.  In October of 2008, the Redtube Website had gained enormous popularity, and was averaging over 7 million visits per day.  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 12; *see also*, *Exhibit D*, hereto.

In addition to the fact that Bright's REDTUBE mark was distinctive at the time of registration of the Infringing Domain Name, the Infringing Domain Name's URL is nearly identical and confusingly similar to Bright's mark.  By failing to respond, Defendant has admitted that the URL contains the REDTUBE trademark.  Compl. ¶ 27.  This is clearly true, as the URL for the Infringing Domain Name, <redtubes.us>, is composed of Bright's exact REDTUBE mark, plus the single letter "S."  Courts have previously determined that differences in the top level domain (".us" versus ".com" in this instance) are not relevant to the confusion analysis.  *See DeGidio v. West Group Corp.*, 355 F.3d 506 (6th Cir. 2004), *cert. denied*, 542 U.S. 904, (2004) (plaintiff's claim to trademark status in <lawoffice.net> is really a claim to a trademark in LAWOFFICE, because the TLD ".net" "has no trademark significance."); *see also* McCarthy on Trademarks and Unfair Competition § 7:17.50 (4th ed.) ("a top level domain designation has no ability to distinguish one source from another and thus, has no trademark significance"); T.M.E.P. § 1215.02 ("When a trademark, service mark, collective mark or certification mark is composed, in whole or in part, of a domain name, neither the beginning of the URL ('http://www.') nor the TLD have any source-indicating significance").  In the past, domains have been found confusingly similar where they consisted of a plaintiff's mark plus an additional element.  *See Volkswagentalk.com*, 584 F. Supp. 2d at 884 (VOLKSWAGEN mark confusingly similar to <volkswagentalk.com>); *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (ATLAS COPCO mark similar to <atlascopcoiran.com>).

It is thus clear that the Infringing Domain Name's URL is "identical or confusingly similar" to Bright's trademark.  *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 664-665 (E.D. Va. 2001); 15 U.S.C. § 1125(d)(1)(A).

### 3.   Defendant Has Acted With a Bad Faith Intent to Profit

In addition to Bright's rights in the REDTUBE trademark, the Infringing Domain Name was used with a bad faith intent to profit off of Bright's mark.  A non-exhaustive list of nine factors are laid out in the text of the ACPA that are intended to guide a court in determining if a domain name was used in bad faith.  *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).

There is no simple formula for evaluating and weighing these factors.  The factors are given as a guide to the courts, so that they may carefully consider whether the conduct at issue is motivated by a bad faith intent by the defendant to profit.  *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).  Additionally,  it should be kept in mind that "[a]s intent is rarely discernable directly, it must typically be inferred from pertinent facts and circumstances." *See International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467 (E.D. Va. 2002).  Despite the difficulty of proving malicious intent, it is clear in this case that Defendant's conduct was engaged in with bad faith.

Here, the factor that is most probative in establishing that the Infringing Domain Name was used with the "bad faith" intent to profit is factor V.  This factor states that, in determining bad faith, a court may consider factors such as:

> (V) the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site…

To begin with, Defendant has admitted through default that it acted in bad faith with the intent to unlawfully profit off of an association with Bright's REDTUBE Mark. Compl., ¶ 27.  *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d

25, 30 (D.D.C. 2008) (failure to answer complaint alleging bad faith intent to profit establishes element of ACPA claim).  Moreover, the facts of this case clearly support this conclusion.

The Infringing Domain Name was registered at a point in time where Bright's Redtube Website was already getting over 7 million visitors per day.  *See* Preece Decl., attached hereto as *Exhibit A*, ¶ 12.  The owners of the Infringing Domain Name then created a commercial dating website that was directly competitive with Bright's own dating service.  Not only was Defendant's website in competition with Bright's own services, it also featured advertisements for other dating services that were in competition with Bright.  In addition, the website at the Infringing Domain Name liberally used the REDTUBE trademark throughout the site.  On the front page of the site, the term REDTUBE is used no less than thirteen times, with the mark often appearing in red text (as opposed to the black text used by most of the front page).  The last appearance of the REDTUBE mark on the site is simply the word on its own, in bold, red type, at the bottom of the page.  *See* Preece Decl., attached hereto as *Exhibit A*, ¶ 6.

The most likely reason that Defendant used the REDTUBE mark so frequently on its website was to try and obtain higher rankings through search engines when users searched for Bright's REDTUBE trademark and website.  The repeated use of a term in the text or metadata of a website is a typical method used to cause a website to appear high in the results returned by Internet search engines when users include that term in their search.  *See* Preece Decl., attached hereto as *Exhibit A*, ¶ 13.  This hypothesis is made even more likely by Defendant's use of other adult-themed text on versions of the website, including "see girls photos," "satisfy your needs," "sexy girls," and "sexy singles."  In fact, this tactic worked—one of the reasons that Bright became aware of Defendant's site was due to its prominent ranking in search results for the REDTUBE trademark.  *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 6.

Defendant's conduct has no legitimate explanation.  Defendant attempted to use a confusingly similar domain name and prolific use of Bright's REDTUBE trademark on its website in order to secure a free ride on the fame of Bright's REDTUBE mark.  This conduct exhibits clear bad faith in connection with Defendant's commercial activities.  It is thus clear, as Defendant has admitted, that Defendant acted with the bad faith intent to profit off of Bright's mark, and is therefore liable for a violation of the ACPA.

**4.       Defendant Has Committed Trademark Infringement**

In addition to liability under the ACPA, Bright is also able to establish liability if the Infringing Domain Name was used to commit trademark infringement.  *See Continentalairlines.com*, 390 F. Supp. 2d at 507.  To establish trademark infringement, Bright must prove the following five elements: (1) that it possesses a mark; (2) that the registrant used the mark; (3) that the registrant's use of the mark occurred in commerce; (4) that the registrant used the mark in the connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the registrant used the mark in a manner likely to confuse consumers.  *See Cont'l Airlines, Inc. v. Continentalairlines.com*, 390 F. Supp. 2d at 507.

As demonstrated above, Bright clearly possesses a valid trademark.  *See* Infra III.B.1.  The remaining elements of a claim of trademark infringement are also clearly established.

**a.       The Registrant Used the REDTUBE Trademark in Commerce**

As noted above, Bright has alleged, and it is admitted, that the Infringing Domain Name was used in connection with a commercial website that advertised its own competing online dating services, and the services of others.  Compl., ¶¶ 12, 27.  The Infringing Domain Name is identical to Bright's mark other than the addition of a single letter.  Additionally, the

content displayed on the Infringing Domain Name made frequent use of Bright's REDTUBE mark to promote its own services.  *Id*. at ¶ 28; Preece Decl., attached hereto as *Exhibit A*, at ¶ 6.

Use of a trademark in a URL, where the content of the domain name at that URL displays or links to commercial material, constitutes use of a mark "in commerce." *See People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *Volkswagentalk.com*, 584 F. Supp. 2d at 883.  Similarly, use of a trademark in the content of a commercial website constitutes use "in commerce" of a mark.  *See Ciphertrust, Inc. v. Trusecure Corp.*, 2005 U.S. Dist. LEXIS 46322, *54 (E.D. Va. 2005) ("use of a mark or name on a website represents use in commerce").

> **b.**   **The Registrant Used the REDTUBE Trademark In Connection With the Sale, Offering for Sale, Distribution, or Advertising of Goods and Services**

Bright has alleged, and it is admitted, that the Domain Name was used to promote competing online dating services using Bright's REDTUBE mark.  Compl., ¶¶ 12, 27-29.  Because Defendant was directly offering its own services under the mark, this clearly constitutes a use "in connection with" goods or services.  *See, e.g., Doughney*, 263 F.3d at 365 (links to websites that contain offers for commercial services constitute "use in connection with" goods or services).  As a result, Bright has established this element.

> **c.**   **The Registrant Used the Mark in a Manner Likely to Confuse Consumers**

Determining whether there is a likelihood of confusion involves the use of a seven-factor test.  In the ACPA context, the seven relevant factors are:

> (i)   the strength of the plaintiff's mark;
>
> (ii)   the similarity between the plaintiff's mark and the allegedly infringing domain name;

(iii)   the similarity between the plaintiff's services and the services provided under the allegedly infringing domain name;

(iv)   the similarity between the facilities the plaintiff uses in its business and the facilities used in connection with the provision of services under the allegedly infringing domain name;

(v)   the similarity between the plaintiff's advertising and advertising used to promote services offered under the allegedly infringing domain name;

(vi)   the intent underlying the use of the allegedly infringing domain name; and

(vii)   the existence of any actual confusion.

*See Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir.1997); *see also Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488, 497 (E.D.Va.1999).  While these are the factors courts generally use, not all of the factors are of equal weight or even relevant in every case. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984). Thus, whether a likelihood of confusion exists in a particular case always depends on the specific facts of that case. *See Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir.1992).

The consideration of these factors demonstrates that the likelihood of confusion is substantial in this case:

Strength of the mark – Bright's REDTUBE mark is strong.  Defendant has admitted and the evidence shows that Bright's mark is famous.  Compl., ¶ 23.  In particular, the exceptional level of popularity of Bright's Redtube Website clearly demonstrates the extent of its fame.  Furthermore, the REDTUBE mark is inherently distinctive.  Therefore, it is clear that Bright's mark is entitled to the highest level of protection.

Similarity of the marks – The Infringing Domain Name differs from Bright's REDTUBE mark only by the addition of a single letter.  This inconsequential distinction is typical of the form of cyberpiracy known as "typosquatting."  In addition, Defendant made frequent use of Bright's exact trademark throughout the website hosted at the Infringing Domain Name.

Similarity of the services – Both Bright and Defendant are engaged in offering online dating services.  To this extent, the services offered by the parties are identical.

Similarity of Facilities and Advertisements – Both parties are offering their services in this instance through websites.  In addition, both websites provide advertisements for dating services.  *See* Preece Decl., ¶¶ 3, 6; *see also*, the <redtubes.us> website as of July 30, 2009, attached hereto as *Exhibit E*.  As a result, the parties' facilities and advertisements are highly similar.

Intent of Defendant – The intentional infringement of Bright's trademark weighs in favor of a likelihood of confusion.  As noted above, the Infringing Domain Name was registered and used to direct traffic to a competing website in order to profit from the fame of Bright's trademark.  This infringing use of Bright's trademark persisted even after Bright's counsel protested it.  No one with an interest in Defendant has appeared or offered any alternative explanation for this conduct, and indeed, through default, intent to infringe has been admitted.  Compl., ¶ 27.  *Breaking the Chain Found.,* 589 F. Supp. 2d at 30.  Therefore this factor as well weighs heavily in favor of likelihood of confusion.

Actual Confusion – Bright is not aware of any actual confusion at this time. However, courts acknowledge that proof of actual confusion can be difficult to obtain, and therefore such proof is not necessary to find a likelihood of confusion.  *See Worsham Sprinkler*

*Co.*, *v. Wes Worsham Fire Prot.*, *LLC*, 419 F. Supp. 2d 861, 879 (E.D. Va. 2006) ("no evidence of actual confusion is required in order to prove a likelihood of confusion"). Therefore, this factor does not weigh against granting Bright the relief it seeks.

Bright has established that a likelihood of confusion exists as a result of the use of the Infringing Domain Name. Its request for default judgment should therefore be granted.

**5.      Trademark Dilution**

In order to prove a claim for trademark dilution, Bright must show that its mark is (1) famous; (2) distinctive; and that (3) after Bright's mark became famous, Defendant commenced use of Bright's mark in commerce and in a manner that is likely to cause dilution by blurring. 15 U.S.C. § 1125(c)(1). Dilution can occur regardless of any likelihood of confusion, competition, or actual economic injury. *Id.*

**a.      The REDTUBE Mark is Famous and Distinctive**

According to the statute, a mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the … services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). One of the factors given by the statute is "The amount, volume, and geographic extent of sales of goods or services offered under the mark." 15 U.S.C. § 1125(c)(2)(A)(ii).

In the case of Bright's Redtube Website, at the time the Infringing Domain Name was registered, the Redtube Website was getting over 7 million visits per day. *See* Preece Decl., attached hereto as *Exhibit A*, at ¶ 12;  Google Analytics *Exhibit D*. This level of traffic shows that Bright's services were being used by an incredibly large number of consumers, and strongly supports a finding that its REDTUBE mark is famous. In addition, as discussed earlier in this memorandum, the REDTUBE trademark is suggestive, and therefore inherently distinctive. As a result, Bright has fulfilled these elements of a trademark dilution claim.

**b.** **Defendant's Use of the REDTUBE Mark is Likely to Cause Dilution by Blurring**

The use of the <redtubes.us> domain name and the REDTUBE trademark on the website at that domain began at a time when Bright's Redtube Website was getting millions of visits every day.  As a result, that use commenced after Bright's REDTUBE mark had already attained extraordinary fame and recognition.  The use of the Infringing Domain Name to trade on the fame of Bright's trademark was and is likely to cause dilution by blurring.

The dilution statute provides a list of factors to be considered when evaluating a claim of dilution by blurring.  Those factors are:

(i)     The degree of similarity between the mark or trade name and the famous mark.

(ii)    The degree of inherent or acquired distinctiveness of the famous mark.

(iii)   The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv)    The degree of recognition of the famous mark.

(v)     Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi)    Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi).

Here, all of these factors favor Bright.  The marks at issue are identical.  The website associated with Defendant is littered with the term REDTUBE, both in the headings of the page, and throughout the rest of the text and the Infringing Domain Name is virtually indistinguishable from the REDTUBE mark.  As addressed above, the REDTUBE mark is inherently distinctive.  The REDTUBE mark is used exclusively by Bright to identify its services.  The Redtube Website is and has been one of the most highly trafficked websites on the

internet, worldwide.  As a result, the REDTUBE mark has become very widely known and famous.  There was no conceivable reason for Defendant to use the REDTUBE trademark on its website other than its intent to create an association with this famous mark.  Lastly, actual association between the marks was achieved by Defendant's successful efforts to gain high search rankings when searching for Redtube.

Because all of the factors listed by the statute favor Bright, Defendant has used the REDTUBE mark in a way that is likely to cause dilution by blurring.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff Bright Imperial Limited respectfully submits that cyberpiracy, infringement, and dilution have been established, and requests that the Court grant its Motion for Default Judgment and order the transfer of the Infringing Domain Name to Plaintiff.

Respectfully submitted,

Dated: October 22, 2010

/s/ Sheldon M. Kline
Sheldon M. Kline (VA Bar No. 27959)
Franklin C. Turner (VA Bar No. 77417)
James M. Chadwick (admitted *pro hac vice*)
Thayer M. Preece (admitted *pro hac vice*)
Karin H. Johnson (admitted *pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, NW, 11th Floor East
Washington, DC 20005
Telephone: (202) 218-0000
Facsimile: (202) 218-0020
skline@sheppardmullin.com
fturner@sheppardmullin.com
jchadwick@sheppardmullin.com
tpreece@shepparmullin.com
kjohnson@sheppardmullin.com

*Attorneys for Plaintiff Bright Imperial Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2010, I electronically filed the

foregoing PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT with the Clerk of the Court

using the CM/ECF system and that a copy was sent electronically and via airmail, postage

prepaid, to the following non-filing party:

> Redtubes.us (info@redtubes.us)
> Sid el Bawchrieh
> Bawchrieh 00961
> Lebanon

> **/s/**
> _____
> Sheldon M. Kline (VA Bar No. 27959)
> Franklin C. Turner (VA Bar No. 77417)
> James M. Chadwick (admitted *pro hac vice*)
> Thayer M. Preece (admitted *pro hac vice*)
> Karin H. Johnson (admitted *pro hac vice*)
> SHEPPARD MULLIN RICHTER & HAMPTON LLP
> 1300 I Street, NW, 11th Floor East
> Washington, DC 20005
> Telephone: (202) 218-0000
> Facsimile: (202) 218-0020
> skline@sheppardmullin.com
> fturner@sheppardmullin.com
> jchadwick@sheppardmullin.com
> tpreece@shepparmullin.com
> kjohnson@sheppardmullin.com

*Attorneys for Plaintiff Bright Imperial Limited*